**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ACUITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-00722-TWP-DKL |
| | ) | |
| ROBIN CURRY, | ) | |
| | ) | |
| Defendant. | ) | |

# ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross-motions for summary judgment and Defendant Robin Curry's ("Mr. Curry") motion for leave to amend the answer/counterclaim. Plaintiff Acuity, a mutual insurance company, filed this action for interpleader and declaratory judgment asking that the Court determine whether it owes Mr. Curry underinsured motorist coverage under a policy held by his employer, FAB Express, Inc. ("FAB Express") (Dkt. 1). Mr. Curry has also filed a request for a declaratory judgment. Mr. Curry asks the Court to declare that there has not been a settlement of the underlying tort action and that Acuity is not entitled to a set-off for the full amounts paid by workers' compensation benefits (Dkt. 20). For the reasons set forth below, Acuity's motion for summary (Dkt. 46) is **GRANTED in part** and **DENIED in part**. Mr. Curry's motion for summary judgment (Dkt. 54) is **GRANTED in part** and **DENIED in part**. Additionally, Mr. Curry's motion for leave to amend his answer/counterclaim (Dkt. 57) is **DENIED as moot**.

## I. LEGAL STANDARD

Summary judgment is only appropriate by the terms of Rule 56(c) where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## II. BACKGROUND

The following facts are undisputed[1]. On January 17, 2008, Mr. Curry and Joseph Calandro ("Mr. Calandro") were in an automobile accident. At the time of the accident, Mr. Curry was operating a truck, within the scope of his employment, which was owned and insured by his employer, FAB Express. As a result of the accident, Mr. Curry suffered serious injuries for which he has been compensated by FAB Express's workers' compensation insurer, United Heartland, in the amount of at least $232,000.00. In addition, Acuity had issued FAB Express a Commercial Auto insurance policy on the truck driven by Mr. Curry. Following the accident, Acuity performed a standard claims investigation and interviewed both Mr. Calandro and Mr. Curry on January 2008. The interviews revealed that Mr. Calandro was at fault for the accident,

[1] In its reply (Dkt. 67), Acuity requests that the Court strike several facts asserted in Mr. Curry's motion. However, requests to strike should be filed as a separate motion, in accordance with Local Rule 7-1(a). To the extent Acuity has moved to strike certain portions of Mr. Curry's motion, the Court denies its request; however, the Court only considers only admissible facts as evidence, and has done so in this motion.

and on January 21, 2008, Acuity issued a letter denying any claim by Mr. Calandro. Thereafter, Acuity closed the claim file.

On February 6, 2009, Mr. Curry filed a personal injury lawsuit in state court against Mr. Calandro, arising from the accident. Mr. Calandro's vehicle was insured by Allstate Insurance Company ("Allstate") and had a policy limit of $100,000.00. Mr. Curry and Allstate discussed settlement, and on June 3, 2010, Mr. Calandro's attorney forwarded a $100,000.00 settlement check from Allstate to Mr. Curry's attorney, along with instruments of release and dismissal of the tort case against Mr. Calandro. Mr. Curry's attorney cashed the check on December 14, 2010, but did not execute or return the release and dismissal documents.

On January 11, 2011, Mr. Curry's attorney contacted FAB Express and requested a copy of any auto insurance policy that may include underinsured motorist coverage because Mr. Curry's damages exceeded Allstate's policy limits. Acuity's issued policy did in fact include underinsured motorist coverage and Mr. Curry received a copy of the policy on February 24, 2011. The policy included the following relevant provisions:

**1. COVERAGE**

*** 

**b. Underinsured Motorists Coverage**

We will pay all sums the *insured* is legally entitled to recover as compensatory damages from the owner or driver of an *underinsured motor vehicle*. The damages must result from *bodily injury* sustained by the *insured* caused by an *accident*. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the *underinsured motor vehicle*.

We will pay only after all liability bonds or policies have been exhausted by payment of judgments or settlements, unless:

(1) We have been given prompt written notice of a *tentative settlement* and decide to advance payment to the *insured* in an

amount equal to that *tentative settlement* within 30 days after receipt of notification; or

(2) We and an *insured* have reached a *settlement agreement*.

Any judgment for damages arising out of a *suit* brought without written notice to us is not binding on us.

* * *

**3. EXCLUSIONS**

This insurance does not apply to any of the following:

b. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation law, disability benefits law or similar law.

* * *

**4. LIMIT OF INSURANCE**

*** * ***

**b. Underinsured Motorists Coverage**

*** * ***

(3) Except in the event of a *settlement agreement*, the Limit of Insurance for this coverage shall be reduced by all sums paid or payable:

(a) By or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage.

(b) Under any workers' compensation, disability benefits or similar law. However, the Limit of Insurance for this coverage shall not be reduced by any sums paid or payable under Social Security disability benefits.

(c) Under any automobile medical payments coverage.

* * *

**5. CHANGES IN CONDITION**

**c.** The Conditions are changed for Underinsured Motorist Coverage as follows:

* * *

> (a) Give us written notice of a *tentative settlement* and allow us to advance payment in an amount equal to that settlement within 30 days after receipt of notification to preserve our rights against the owner or driver of the *underinsured motor vehicle*.
>
> (b) File *suit* against the owner or driver of the *underinsured motor vehicle* prior to the conclusion of a *settlement agreement*. Such *suit* cannot be abandoned or settled without giving us written notice of a *tentative settlement* and allowing us 30 days to advance payment in an amount equal to that settlement to preserve our rights against the owner or driver of the *underinsured motor vehicle*.
>
> (c) Promptly send us copies of the legal papers if a *suit* is brought.

* * *

> **6. ADDITIONAL DEFINITIONS**
>
> As used in this endorsement:
>
> e. "Tentative settlement" means an offer from the owner or driver of the *underinsured motor vehicle* to compensate an *insured* for damages incurred because of *bodily injury* sustained in an *accident* involving an *underinsured motor vehicle*.

Dkt. 48-3 at 18–23 (emphasis in original).

Thereafter, in a letter dated April 8, 2011, Mr. Curry's attorney informed Acuity as follows: "On behalf of Joseph Calandro, All-State Insurance Company has offered and we have agreed to accept the policy limits of $100,000.00." Dkt. 56-12 at 1. Mr. Curry sought, pursuant to Indiana Code § 27-7-5-6, either advance payment from Acuity of $100,000.00 to Mr. Curry or permission to accept the offer. In response, Acuity refused to consent to the settlement because Mr. Curry had settled his tort claim without providing notice to Acuity as required by their policy. Acuity then filed this action for interpleader and declaratory judgment, and deposited the sum of $100,000.00 with the Court.

On June 8, 2011, Mr. Curry's attorney returned the $100,000.00 paid by Allstate. Allstate accepted and deposited the money. On August 29, 2011, Mr. Calandro filed a Motion to Enforce Settlement in the underlying state tort action. *See* Dkt. 48-1 at 9–10. Mr. Calandro eventually withdrew the Motion on March 5, 2012, after reaching an agreement with Mr. Curry on February 23, 2012. *See* Dkt. 48-1 at 21–23. In the agreement, Mr. Calandro agreed to dismiss the Motion without prejudice, in exchange for Mr. Curry's covenant not to settle with Acuity unless such settlement included a release against Mr. Calandro and Allstate. Dkt. 48-1 at 21. Mr. Curry and Mr. Calandro's agreement acknowledged that it could be cancelled due to impossibility if Acuity and Mr. Curry could not reach such a settlement, and further, that Mr. Calandro could rescind the agreement and re-file the Motion to Enforce at any time.

## III. DISCUSSION

### A. Choice of Law

The parties do not dispute that Illinois law governs the interpretation of the insurance contract at issue in this case and Indiana law applies to the determination of whether Mr. Curry and Mr. Calandro reached an enforceable settlement agreement in the Indiana state court action.

### B. Status of Settlement Agreement and Acuity's Coverage

Acuity contends that Mr. Curry and Mr. Calandro reached an enforceable settlement, and because it was not notified as required by the terms of its policy, it is entitled to deny coverage. Acuity's contention is supported by the April 8, 2011 letter informing Acuity of Allstate's offer and Mr. Curry's acceptance of $100,000.00. To the contrary, Mr. Curry contends that because he never released his claim against Mr. Calandro, the tort action is still pending, and because Mr. Calandro withdrew his Motion to Enforce Settlement, there is no basis for Acuity's claim that the policy was violated. Alternatively, Mr. Curry argues that the settlement was rescinded by both

parties, citing the return of $100,000.00 to Allstate, the withdrawal of the Motion to Enforce Settlement, and the February 23, 2012 agreement.

In the Court's view, the February 23, 2012 agreement is not dispositive on the issue of rescission. Mr. Curry argues that Mr. Calandro acquiesced to rescission by failing to object. Specifically, because Allstate deposited the $100,000.00 check from Mr. Curry's attorney and Mr. Calandro did not object, that the rescission occurred by mutual consent. *See Killion v. Updike*, 316 N.E.2d 837, 839 (Ind. Ct. App. 1974). However, as emails between Mr. Curry's and Mr. Calandro's attorneys show, Mr. Curry sought a stipulation that "there was no enforceable settlement agreement" between Mr. Curry and Mr. Calandro. Dkt. 48-5 at 1. Yet, the final signed agreement does not contain such a stipulation, it only states that Mr. Calandro will withdraw his Motion to Enforce Settlement without prejudice, but retains the right to re-file the Motion. On the basis of these facts, the Court finds that to the extent a settlement was reached, it was not mutually rescinded because the parties were not put back to status quo. Instead, Mr. Calandro retains the ability to seek enforcement of the prior settlement in state court. There was no rescission of the tentative settlement, therefore, the Court must determine whether Acuity is entitled to deny Mr. Curry coverage under its underinsured motorist provision.

As stated earlier, Illinois law governs the interpretation of the insurance contract. In Illinois, "an insurer who invokes a cooperation clause must affirmatively show that it was prejudiced by the insured's failure to notify it in advance of his settlement with the tortfeasor." *Progressive Direct Ins. Co. v. Jungkans*, 972 N.E.2d 807, 811 (Ill. App. Ct. 2012) (citing *M.F.A. Mut. Ins. Co. v. Cheek*, 363 N.E.2d 809, 813 (Ill. 1977)). In *Jungkans*, under similar facts, the court discussed whether an insurer could show substantial prejudice by the loss of its subrogation right. The insured argued that the mere loss of subrogation rights against a judgment-proof

tortfeasor was not enough to show, as a matter of law, prejudice. *Id.* at 812–13. The court agreed with the insured, and found that "the mere right to sue the tortfeasor is of no value if there is no reasonable likelihood of obtaining a judgment that is worth the cost of litigation." *Id.* at 814. It reasoned that "allowing an insurer to avoid coverage when it lost subrogation rights which carried no reasonable possibility of collection beyond the tendered policy limits would constitute forfeiture and would produce an undeserved windfall to the insurance company." *Id.* (internal quotations omitted).

Acuity argues that *Jungkans* is not controlling and attempts to distinguish the case on two grounds. However, as Mr. Curry recognized, Acuity's first distinction of *Jungkans* misreads the case. Before reaching the issue of whether the mere loss of subrogation rights established prejudice, the *Jungkans* court discussed whether subrogation rights survived in the case because the third party insurer knew of the plaintiff insurer's subrogation rights when the third party insurer settled with the defendant. The *Jungkans* court found that when the third party insurer "knew in advance of the settlement that plaintiff [insurer] had a subrogation right against [the tortfeasor] this was sufficient to defeat the invocation of the cooperation clause." *Id.* at 812. This section of *Jungkans* neither supports nor harms Mr. Curry's position. It is an independent ground on which the *Jungkans* court relied to hold that the plaintiff insurer could not invoke the defendant's failure to comply with the cooperation clause to deny coverage. The court concluded that "even were we to hold that there was a genuine issue of material fact on the issue of knowledge, the judgment still cannot stand, because plaintiff failed to raise a factual issue on whether it was prejudiced by defendant's noncompliance with the cooperation clause." *Id.* It is this second part of *Jungkans*, that applies in this case.

Acuity's second point of distinction highlights the dispositive issue in this case; whether

the evidence shows that Mr. Calandro is collectible. Stated differently, actual prejudice to Acuity can be determined by whether Mr. Calandro has assets that can be collected in a subrogation action. This is a fact-intensive analysis, and thus the outcome of *Jungkans* does not bear heavily on this case. If Mr. Calandro is not collectible, Acuity's mere loss of subrogation rights pursuant to the settlement is not prejudicial. Acuity contends that Mr. Calandro is collectible, and directs the Court to evidence from Laura Jakel ("Ms. Jakel"), the Acuity claims representative handling Mr. Curry's claims process. To assess possible collectability for subrogation purposes, Ms. Jakel did an asset check of Mr. Calandro. *See* Dkt. 68-3 (under seal). Ms. Jakel's log notes indicate that she found that Mr. Calandro "appears to be collectable. He owns property with 20 acres and appears to own his own plumbing business." Dkt. 68-3 at 37 (under seal). However, in deposition testimony, Ms. Jakel stated that she did not know the monetary value of Mr. Calandro's assets, nor if the assets could be subject to actual collection or garnishment. Dkt. 68-2 at 2. Mr. Curry has presented evidence that Mr. Calandro has substantial debts. *See* Dkt. 77-4. Specifically, Mr. Calandro owns his home and vehicles jointly with his wife. He has loans on his home and vehicles that are worth more than the appraised value of the properties. His house also serves as collateral for an additional loan. In Indiana, an interest held jointly with a spouse is exempt from collection judgments. Ind. Code § 34-55-10-2(c)(5). Because Mr. Calandro's assets are jointly held with his wife, and his wife would not be jointly liable in a subrogation action, these assets are not collectible. Furthermore, Acuity has made no showing that Mr. Calandro has any other property or assets that it could expect to collect given Mr. Calandro's undisputed debts.

Acuity cannot establish it will suffer substantial prejudice as a result of a settlement between Mr. Curry and Mr. Calandro. Although the Court finds in Acuity's favor that a

settlement was reached and it was not rescinded, Acuity has not shown that it suffered substantial prejudice. Therefore, the Court **GRANTS** Mr. Curry's cross motion for summary judgment (Dkt. 54) under the substantial prejudice theory and **DENIES** Acuity's motion on the issue of whether Acuity can invoke Mr. Curry's noncompliance with the policy's cooperation clause to deny him coverage for his underinsured motorist claim (Dkt. 46).

Because the Court grants summary judgment in Mr. Curry's favor under the substantial prejudice theory, it is unnecessary for the Court to address Mr. Curry's additional arguments involving whether the lack of knowledge of the underinsured motorist policy was a fundamental mistake and whether Acuity had a duty to inform Mr. Curry about the underinsured motorist coverage.

**C. Applicability of the Policy's Set-Off Provisions**

Acuity contends that its Limit of Insurance provision entitles it to reduce the amount paid to Mr. Curry by the amount of workers' compensation benefits received and the settlement amount from Allstate. Mr. Curry responds that any set-off should correspond only to the net amount of workers' compensation benefits he has received.[2] He specifically argues that the policy provision providing that the amount payable by Acuity is reduced by "all sums paid or payable . . . [b]y or for anyone who is legally responsible" and "[u]nder any workers' compensation, disability benefits or similar law," is ambiguous. He cites Indiana law to support his position that the Court should construe the provision to apply only to amounts he retains. *See Wildman v. Nat'l Fire & Marine Ins. Co.*, 703 N.E.2d 683, 687 (Ind. Ct. App. 1998). In *Wildman* the court specifically held that the phrase "all sums paid or payable" was ambiguous as applied to whether "this phrase means the amount of worker's compensation benefits originally

[2] Mr. Curry and the workers' compensation benefits provider negotiated a lien, under which the provider is entitled to $20,000.00 upon acceptance of the $100,000.00 settlement from Allstate. Mr. Curry has received approximately $232,000.00 in workers' compensation benefits.

received by the insured" or whether it "applies only to those benefits retained after subtraction of the compensation carrier's" lien. *Id.* Finding that reasonable people could disagree on the meaning, the court construed the policy in favor of the insured. *See Cherry v. Coregis Ins. Co.*, 204 P.3d 522, 525–27 (Idaho 2009) (construing "sums paid or payable" and finding that the phrase is ambiguous, thus construing against the insurer).

However, Illinois law governs the interpretation of the Acuity contract and Mr. Curry has not cited, nor can the Court find, any case law directly on point. In Illinois the construction given to an insurance policy should be a natural and reasonable one. *Gillen v State Farm Mut. Auto. Ins*. Co. 830 N.E.2d 575, 582. (Ill., 2005). In *Gillen*, the explicit language of a similar setoff clause referred to deductions for payments made "under any worker's compensation, disability benefits, or similar law" and the court found the "similar law" provision was too vague to convey to the average, ordinary, reasonable person an intention to include a pension statute within the setoff clause of the policy. *Id*. In contrast, Acuity argues the language in Acuity's policy is sufficiently clear so that an ordinary person would understand the workers compensation exclusion: " . . . the Limit of Insurance for this coverage shall be reduced by all sums paid or payable . . . (b) under any workers' compensation, disability benefits or similar law."

Mr. Curry has directed the Court to *Roberts v. Northland Ins. Co.*, 705 N.E.2d 762 (Ill. 1998). In *Roberts*, the insured's workers' compensation benefits were reduced by the amount secured from the tortfeasor. The subsequent underinsured motorist coverage was then reduced by the net workers' compensation benefits received, not the amount to which the insured was initially entitled. *See Roberts v. Northland Ins. Co.*, 685 N.E.2d 371, 372 (Ill. Ct. App. 1997) (noting the reduction but not analyzing the issue). Likewise, in *Hathaway v. Std. Mut. Ins. Co.*,

673 N.E.2d 725, 730 (Ill. App. Ct. 1996), the court found that underinsurance coverage would be set-off by the amount "actually received" from the tortfeasor.  The court in *Koperski v. Amica Mut. Ins. Co.*, 678 N.E.2d 734, 738 (Ill. App. Ct. 1997), found that "the insurer is obligated to pay benefits only up to the limit of the coverage selected by the insured, less those amounts *actually recovered* from the tortfeasor's liability insurer." (emphasis added).  The language used in these cases derives from 215 Ill. Comp. Stat. 5/143a-2(4), which states that an insurer may deduct underinsured motorist benefits by amounts "actually recovered under the applicable bodily insurance policies, bonds or other security maintained on the underinsured motor vehicle."  In *Susler v. Country Mut. Ins. Co.*, 591 N.E.2d 427 (Ill. 1992), the Illinois Supreme Court found that this list was non-exhaustive and included payments received from workers' compensation benefits because the public policy interest in providing underinsured motorist coverage is "to place the insured in the same position he would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder."  *Id.* at 430.  In *Susler*, the insurance policy used the language "all amounts payable under any workmen's compensation, disability benefits or similar law."  *Id.* at 431.  However, in none of these cases did the Court discuss the precise issue before the Court in this case.

     Acuity on the other hand, argues that the plain language of the policy does not require any such set-off reduction, and Illinois courts have considered this type of uninsured motorist/underinsured motorist ("UM/UIM") set-off language before without finding it ambiguous in cases such as *Taylor v. Pekin Ins. Co*., 899 N.E.2d 251 (Ill. 2008); and *Wehrle v. Cincinnati Ins. Co*., No. 12 C 331, 2012 WL 3627338, at *2-3 (E.D.Ill. Aug. 21, 2012) (applying Illinois law to construing a UM/UIM set-off provision).  Again, in Illinois the purpose of underinsured coverage is "to place the insured in the same position he would have occupied if

the tortfeasor had carried adequate insurance." *Id.* at *2 (quoting *Susler*, 591 N.E.2d at 429).

The Court must determine, then, whether the policy language at issue in this case refers to all amounts paid to or the amounts actually received or retained by Mr. Curry. In Illinois,

> . . . insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011) (citations omitted).

As Acuity has argued, if Mr. Calandro had carried adequate insurance, there would be no expectation that Mr. Curry would not have had to settle his worker's compensation lien with United Heartland. Given Illinois' strong public policy in placing an insured in the same position he would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder, the Court finds it appropriate to construe the phrase "all sums paid or payable" in favor of Acuity. Considering the persuasive authority presented by each party, the Court finds the policy provision to be unambiguous. Therefore, any benefits Mr. Curry has received or will receive from Mr. Calandro's insurer or from FAB's workers' compensation carrier should be subject to the set-off provision in Acuity's policy.

Acuity's motion on this issue is **GRANTED** and Mr. Curry's cross-motion on this issue is **DENIED**.

## IV. CONCLUSION

Accordingly, Acuity's motion for summary judgment (Dkt. 46) is **DENIED** on the issue of whether it owes Mr. Curry underinsured motorist coverage as a matter of law because Acuity

cannot show substantial prejudice; but **GRANTED** on the issue that Acuity is entitled to a set-off in the full amount of workers' compensation benefits and the full amount received from Allstate by Mr. Curry. Mr. Curry's cross-motion for summary judgment (Dkt. 54) is **GRANTED** in that Acuity cannot invoke Mr. Curry's noncompliance with the policy's cooperation clause to deny him coverage for his underinsured motorist claim and **DENIED** regarding a set-off for only the amounts Mr. Curry is allowed to retain. Given the Court's disposition of this matter, Mr. Curry's motion for leave to amend the answer/counterclaim (Dkt. 57) is **DENIED as moot**.

Finally, the parties are to confer and within 14 days, file a proposed order directing disbursement of the funds that were deposited by the Plaintiff in this case, along with any accrued interest. The parties may contact the Courtroom Deputy Clerk for a sample order. Thereafter, the Court will issue final judgment in this matter.

**SO ORDERED**.

Date: 06/26/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Danford Royce Due
DUE DOYLE FANNING & METZGER
ddue@duedoyle.com

Scott Ernest Andres
DUE DOYLE FANNING & METZGER
sandres@duedoyle.com

Matthew J. Schad
SCHAD & SCHAD
mschad@schadlaw.com

Karen Jane Mellencamp Davis
THE PARDIECK LAW FIRM
kmd@pardiecklaw.com

Roger L. Pardieck
THE PARDIECK LAW FIRM
rlp@pardiecklaw.com